CASE NUMBER 3:08-CV-1062-WHA

---

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

---

HUGO NERY BONILLA,

*Appellant*,

v.

ATR-KIM ENG FINANCIAL CORPORATION AND ATR-KIM ENG
CAPITAL PARTNERS, INC.,

*Appellees.*

---

On Appeal From
The United States Bankruptcy Court
for the Northern District of California
San Francisco Division
Bankruptcy Case No. 07-30309
Adversary Proc. No. 07-3079

---

### APPELLEES' BRIEF

---

MICHAEL J. BAKER (No. 56492)
WILLIAM J. LAFFERTY (No. 120814)
NEIL W. BASON (No. 167662)
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:    415/434-1600
Facsimile:    415/217-5910

*Attorneys for Appellees ATR-KIM ENG FINANCIAL
CORPORATION and ATR-KIM ENG CAPITAL
PARTNERS, INC.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................... 1

STATEMENT OF THE BASIS FOR APPELLATE
JURISDICTION ............................................................... 4

ISSUE PRESENTED ......................................................... 5

STANDARDS OF APPELLATE REVIEW ......................... 5

STATEMENT OF THE CASE .......................................... 6

    I.    THE DELAWARE ACTION. ................................ 6

    II.   THE INSTANT BANKRUPTCY
           PROCEEDINGS. ................................................. 8

ARGUMENT ...................................................................... 11

    I.    THE UNDISPUTED FACTS, IN
        CONJUNCTION WITH THE FINDINGS OF
        THE DELAWARE COURT, ESTABLISH
        THAT DEBTOR IS A "FIDUCIARY"
        WITHIN THE MEANING OF SECTION
        523(A)(4). ............................................................ 11

        A.   A "Fiduciary" Capacity Includes Not
              Only A Formal Written Or Statutory
              Trust But Also Any Sufficiently Similar
              Trust-Like Relationship. ............................. 12

            1.   Not every relationship of trust
                 amounts to a fiduciary relationship
                 under Section 523(a)(4). ...................... 12

            2.   What is meant by an "express" or
                 "technical" trust? ................................... 13

            3.   There is nothing controversial in
                 concluding that a "fiduciary
                 capacity" under Section 523(a)(4)
                 includes trust-like duties. .................... 15

        B.   As A Director Of A Delaware
              Corporation, Debtor Owed Trust-Like
              Obligations To The Corporation's
              Shareholders. .............................................. 16

# TABLE OF CONTENTS

**Page**

1.  Delaware law has historically imposed "trust-like" duties on its directors that are at least as demanding as those in Ninth Circuit cases holding debtors to be "fiduciaries."                16

2.  Debtor misconstrues *Cantrell*.                18

3.  Debtor is incorrect in suggesting that the Delaware Supreme Court's decision in *Bovay* silently overrules the earlier *Bodell* decision.                19

4.  Debtor misapprehends the analogy to *Gheewalla*.                21

5.  Debtor misconstrues *Caremark*, and the bankruptcy court's brief references to *Caremark*.                22

C.  There Is A Trust *Res* And A Beneficiary In This Case.                23

CONCLUSION                25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533
(Del. 1996) ........................................................................ 19

*Beneficial Indus. Loan Corp. v. Smith*, 170 F.2d 44 (3d
Cir. 1948), *aff'd*, 337 U.S. 541 (1949) .......................... 20, 21

*Bodell v. Gen. Gas & Elec. Corp.*, 132 A. 442 (Del. Ch.
1926) ...................................................... 9, 10, 19, 20, 21

*Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808 (Del. 1944) ...... 19, 20

*Bowen v. Imperial Theaters, Inc.*, 115 A. 918 (Del. Ch.
1922) ................................................................................ 17

*Carrasco v. Carrasco*, 422 P.2d 411 (Ariz. Ct. App.
1967) ................................................................................ 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................... 5

*Chapman v. Forsyth*, 43 U.S. 202 (1844) ............................ 12

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934) ........... 12

*DeSantis v. Dixon*, 236 P.2d 38 (Ariz. 1951) ...................... 14

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
817 A.2d 160 (Del. 2002) .......................................... 20, 21

*Grace v. Morgan*, No. Civ. A 03C05260JEB, 2004 WL
26858 (Del. Super. Jan. 6, 2004) ................................... 21

*Guth v. Loft, Inc.*, 5 A.2d 503 (Del. Ch. 1939) ............ 17, 18, 19

*Hynson v. Drummond Coal Co.*, 601 A.2d 570 (Del. Ch.
1991) ................................................................................ 17

*In re Bennett*, 989 F.2d 779 (5th Cir. 1993), *amended*,
1993 WL 268299 (9th Cir. July 15, 1993) ...................... 15

*In re Briles*, 228 B.R. 462 (Bankr. S.D. Cal. 1998) ............. 2

*In re Cantrell*, 329 F.3d 1119 (9th Cir. 2003) ...... 3, 10, 11, 18, 19

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959
(Del. Ch. 1996) .............................................................. 22, 23

## TABLE OF AUTHORITIES

**Page(s)**

*In re Colton*, No. 05-56430-MM, 2007 WL 1615069
    (Bankr. N.D. Cal. June 4, 2007)                                      15

*In re Cook*, 263 B.R. 249 (Bankr. N.D. Iowa 2001)                       16

*In re Dawley*, 312 B.R. 765 (Bankr. E.D. Pa. 2004)                       6

*In re Hammond*, 98 F.2d 703 (2d Cir. 1938)                              21

*In re Heilman*, 241 B.R. 137 (Bankr. D. Md. 1999)                    22, 23

*In re Hemmeter*, 242 F.3d 1186 (9th Cir. 1991)                       13, 14

*In re Jacks*, 266 B.R. 728 (9th Cir. BAP 2001)                          11

*In re Lewis*, 97 F.3d 1182 (9th Cir. 1996)          3, 9, 11, 12, 13, 14, 18

*In re Moskowitz*, 310 B.R. 21 (Bankr. E.D.N.Y. 2004)                    16

*In re Niles*, 106 F.3d 1456 (9th Cir. 1997)                            11

*In re Nourbakhsh*, 67 F.3d 798 (9th Cir. 1995)                          5

*In re OneCast Media, Inc.*, 439 F.3d 558 (9th Cir. 2006)                4

*In re Pedrazzini*, 644 F.2d 756 (9th Cir.1981)                      13, 14

*In re Sax*, 106 B.R. 534 (Bankr. N.D. Ill. 1989)                       24

*In re Shoe-Town, Inc. Stockholders Litig.*, No. C.A. No.
    9483, 1990 WL 13475 (Del. Ch. Feb. 12, 1990)                        21

*In re Short*, 818 F.2d 693 (9th Cir. 1987)                             23

*In re Snyder*, 101 B.R. 822 (Bankr. D. Mass. 1989), *aff'd
    in part & rev'd in part on other grounds sub nom.
    Bornstein v. Snyder*, 923 F.2d 840 (1st Cir. 1990)                21, 24

*In re Stanifer*, 236 B.R. 709 (B.A.P. 9th Cir. 1999)                 15, 24

*In re Sullivan*, 217 B.R. 670 (Bankr. D. Mass. 1998)                    16

*In re Teichman*, 774 F.2d 1395 (9th Cir. 1985)                       13, 14

*In re Zachary Shultz*, 205 B.R. 952 (Bankr. D.N.M. 1997)       6, 17, 19, 24

*Keenan v. Eshleman*, 2 A.2d 904 (Del. 1938)                            17

*Lawrence T. Lasagna, Inc. v. Foster*, 609 F.2d 392 (9th
    Cir. 1979)                                                         11

# TABLE OF AUTHORITIES

**Page(s)**

*Lofland v. Cahall*, 118 A. 1 (Del. Ch. 1922) .......... 17

*Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994) .......... 21

*Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209 (9th Cir. 1987) .......... 4

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007) .......... 11, 21, 22, 24

*Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914 (Del. 2003) .......... 17

*Petty v. Penntech Papers, Inc.*, 347 A.2d 140 (Del. Ch. 1975) .......... 17

*Prestancia Mgmt. Group, Inc. v. Virginia Heritage Found., II LLC*, No. Civ. A. 1032-S, 2005 WL 1364616 (Del. Ch. May 27, 2005) .......... 21

*Price v. Wilmington Trust Co.*, No. Civ. A. No. 12476, 1996 WL 451318 (Del. Ch. Aug. 6, 1996), *aff'd*, 692 A.2d 416 (Del. 1997) .......... 17

*Price v. Wilmington Trust Co.*, No. Civ. A. No. 12476, 1996 WL 560177 (Del. Ch. Sept. 3, 1996) .......... 17

*Prof'l Hockey Corp. v. World Hockey Ass'n*, 143 Cal. App. 3d 410 (1983) .......... 19

*Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. 1986) .......... 12, 13, 14, 15, 23

*Schoon v. Smith*, No. 554, 2006, —A.2d—, 2008 WL 375826 (Del. Feb. 12, 2008) .......... 19

*Shamrock Holdings, Inc. v. Polaroid Corp.*, 559 A.2d 257 (Del. Ch. 1989) .......... 16

*Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985) .......... 17

*Stegemeier v. Magness*, 728 A.2d 557 (Del. 1999) .......... 17

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) .......... 17

*United States v. Montoya*, 45 F.3d 1286 (9th Cir. 1995) .......... 23

*Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir. 1997) .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Statutes

11 U.S.C.
    §523(a)(4)     *passim*

28 U.S.C.
    §158(a)(1)     5
    §158(c)(1)(B)     4

Fed. R. Civ. P.
    54(b)     4, 5
    56(e)(2)     5

Fed. R. Bankr. P.
    7054(a)     4
    7056     5
    8001(e)     4
    9021     4

Cal. Corp. Code §15021(1) (West 1977) (former section)     15

8 Del. Code §102(b)(7)     17

## Other Authorities

3 COLLIER ON BANKRUPTCY ¶523.14 (15th ed. 1996)     14

4 COLLIER ON BANKRUPTCY ¶523.10[1][d] (15th rev. ed. 2006)     12

Volume B, COLLIER ON BANKRUPTCY App. 4(d) (15th rev. ed. 2006)     12

Volume C, COLLIER ON BANKRUPTCY App. 4(d)(i) (15th rev. ed. 2006)     12

## INTRODUCTION

Debtor and Appellant Hugo N. Bonilla ("Debtor") appeals from the bankruptcy court's partial summary judgment holding that a debt of approximately $24.5 million is nondischargeable because it is for "defalcation while acting in a fiduciary capacity." 11 U.S.C. §523(a)(4) ("Section 523(a)(4)"). That debt arises from a judgment of the Delaware Court of Chancery, which was affirmed in its entirety by the Delaware Supreme Court, in favor of Appellees ATR-Kim Financial Corporation and ATR-Kim Eng Capital Partners, Inc. (collectively, "Appellees" or "ATR"). That judgment (the "Final Judgment") and the findings on which it is based are therefore issue preclusive in this adversary proceeding.

In the words of the Chancery Court, Debtor "conscious[ly] disregard[ed]" his duties as a director of a Delaware corporation, PMHI Holdings Corp. (the "Delaware Holding Company"). ER Tab 1 Ex. A at *1, *19.[1] The court found that Debtor did nothing to monitor, prevent or rectify the transfer by Carlos R. Araneta, the holder of 90% of the corporation's stock ("Araneta"), of virtually all of the corporation's valuable assets to his family members for no consideration, resulting in what Debtor describes on this appeal as the "*de facto* liquidation of the business." Appellant's Opening Brief ("AOB") at 4. In fact, Debtor helped to conceal if not implement that liquidation. ER Tab 1 Ex. A at *6, *8, *19-*21 & nn.28, 30. Because of the preclusive effect of the Delaware courts' determinations, there can no longer be any argument about these facts, or the scope of Debtor's duties as a director, or Debtor's conscious failure to perform any of the duties required of a director under Delaware corporate law.

Although Debtor's opening brief quotes somewhat selectively from the facts determined by the Delaware courts, Debtor apparently does not dispute that the debt

---

[1]The Appellant's Excerpts of Record ("ER") are not consecutively paginated and, rather than burden the Court with a duplicative set that is consecutively paginated, Appellees refer to the ER by tab number, followed by a page number and (when available) line numbers.

resulted from "defalcation."  *See* AOB at 2 (statement of issues on appeal).[2]  Debtor also concedes that, "as the director of a Delaware corporation, [D]ebtor owed fiduciary duties to the corporation's shareholders and to the corporation."  AOB at 1.  Those fiduciary duties run directly to Appellees, who held a 10% equity interest in the looted corporation.

Debtor's sole argument on this appeal is that, despite his admission that he owed "fiduciary" duties to Appellees under Delaware law, he is not a "fiduciary" under Section 523(a)(4).  *See* AOB at 2 (statement of issues on appeal) and *passim*.  Even with respect to this legal issue, the parties appear to agree on the fundamental doctrinal basis by which courts should determine whether a debt is nondischargeable under Section 523(a)(4).  The parties agree, for example, that not every "fiduciary" relationship is included within the meaning of Section 523(a)(4)'s exception of discharge of debts incurred as a result of "defalcation while acting in a fiduciary capacity."  Neither constructive trusts nor broadly defined "fiduciary-type relationships" that are not "trust-like" are sufficient to invoke the penalties of nondischargeability of a debt.  Rather, the duties imposed on the debtor by state law must arise from what the cases call an "express" or "technical" trust.

Those cases require only, as the bankruptcy court correctly held, that (a) the debtor's duties must have been imposed before the occurrence of and without reference to the wrongdoing that caused the debt and (b) the duties, which are not limited to those imposed by a formal trust document or statute, must be "substantially similar" to such formal trust duties, meaning that there must be an identifiable trust *res* and identifiable beneficiaries, and the debtor must be subject to the duties of loyalty, good faith, and honesty in caring for the trust *res*.  *See* ER Tab 7 at 2:10-19, 4:20-24.  Debtor had exactly such duties under Delaware law.

---

[2]"Defalcation is broadly defined to include any behavior by a fiduciary, including innocent, negligent, and intentional defaults of fiduciary duty resulting in failure to provide a complete accounting."  *In re Briles*, 228 B.R. 462, 467 (Bankr. S.D. Cal. 1998).

Debtor ascribes two alleged errors to this holding:  he argues that the bankruptcy court, by misreading a Ninth Circuit case (*Lewis*) (AOB at 20-22), invented a new and unwarranted "substantially similar" test to determine whether an express or technical trust existed, and he claims that somehow the bankruptcy court should have applied another Ninth Circuit case interpreting *California* law (*Cantrell*) to hold that his duties under *Delaware* law do not amount to those of an "express" or "technical" trust (AOB at 13-20).   Debtor completely misapprehends both the bankruptcy court's rulings and binding authority in the Ninth Circuit and Delaware.

As numerous courts, in the Ninth Circuit and throughout the country, have recognized, "express" or "technical" trusts include not only trusts that arise from a formal trust agreement or statute, but also from trust relationships under common law and "trust-like" relationships if they are substantially similar to more formal trusts.  This is not a "new" test, departing from Ninth Circuit precedent (AOB at 1, 21)—to the contrary, several Ninth Circuit cases have used the phrases "similar," "substantially similar," or "trust-like" to describe the required duties, or have stated that the relationship must "exhibit characteristics of the traditional trust relationship."  Moreover, the bankruptcy court correctly interpreted the Ninth Circuit cases in the only way that makes sense: since the Ninth Circuit has held more than once that partners, for example, can be "fiduciaries," despite the absence of any formal trust document or statutory trust, the only way to reconcile these holdings with the Ninth Circuit's references to "express" or "technical" trusts is to apply a functional test that looks to whether the debtor's duties at the time of the defalcation were trust-like or substantially similar to the duties of a trustee under a more formal trust.  The alternative to this functional test would be, in the bankruptcy court's words, a "formalistic taxonomy."  ER Tab 17 at 3:25-26.

As for Debtor's actual duties under state law, he does not dispute that Delaware law applies, and yet somehow he believes it was error for the bankruptcy court not to have applied a Ninth Circuit case interpreting California law.  In fact, Delaware law

establishes both an actual trust relationship between corporate directors and shareholders and, alternatively, a trust-like relationship sufficient to create a "fiduciary" duty within the meaning of Section 523(a)(4). In particular, there is no question that Debtor had fiduciary duties at the most basic level to protect minority shareholders from the *de facto* liquidation of the business and the transfer of its assets to the majority shareholder's family without consideration.

For all of these reasons, the duties imposed on Debtor as a director under Delaware law are those of a "fiduciary." Having committed defalcation while acting as a fiduciary, Debtor's debt to ATR is nondischargeable.

### STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION

On January 2, 2008, the bankruptcy court, Hon. Thomas E. Carlson presiding, entered its Partial Summary Judgment on Fourth Cause of Action and Rule 54(b) Certification (the "Rule 54(b) Judgment"). *See* Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054(a). Debtor timely filed a notice of appeal on January 9, 2008.[3] On January 29, 2008, Appellees filed a timely Statement of Election to Have Appeal Heard by the District Court. *See* Fed. R. Bankr. P. 8001(e); 28 U.S.C. §158(c)(1)(B). On March 5, 2008, this Court issued an order denying Debtor's request to certify this appeal directly to

---

[3]That notice of appeal actually refers to the "decision" of the bankruptcy court (a) denying Debtor's motion to reconsider denial of his motion to dismiss and (b) granting Appellees' motion for partial summary judgment. ER Tab 20 at 1:24-28. This is technically incorrect, because (a) one appeals from a judgment, not a "decision" (Fed. R. Bankr. P. 9021), (b) the only certification under Rule 54(b) was as to the partial summary judgment (not the denial of Debtor's motion to reconsider his motion to dismiss) and (c) a denial of a motion to dismiss is not a final, appealable judgment. *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987). Appellees believe that Debtor intended to appeal solely from the Rule 54(b) Judgment (among other things, Debtor's opening brief on this appeal only sets forth the standard of appellate review of an order granting summary judgment). *See* AOB at 3. *Cf. In re OneCast Media, Inc.*, 439 F.3d 558, 561 (9th Cir. 2006) (standard of review for denial of a motion for reconsideration is "abuse of discretion"). Accordingly, this brief addresses the Rule 54(b) Judgment and does not separately address the bankruptcy court's decision to deny Debtor's motion for reconsideration. If this Court is inclined to believe for any reason that the bankruptcy court's "decision" regarding the motion for reconsideration is either a final judgment or an interlocutory judgment as to which review is proper, then Appellees would respectfully request an opportunity to brief the issue.

the Ninth Circuit.[4]  This Court has jurisdiction to hear the appeal from the Rule 54(b)
Judgment under 28 U.S.C. §158(a)(1) because that judgment is final, by virtue of the
certification under Rule 54(b).

## ISSUE PRESENTED

Does a director of a Delaware corporation, who is found to have "consciously"
disregarded his fiduciary duties under Delaware law and who thereby facilitates the
transfer of the corporation's assets to third parties for no consideration at the expense of
the minority shareholder, commit a defalcation while acting in a "fiduciary" capacity
within the meaning of 11 U.S.C. §523(a)(4)?

## STANDARDS OF APPELLATE REVIEW

Appellees agree with Debtor that the standard of review is *de novo*, and therefore
this District Court applies the same legal standards that controlled the bankruptcy court.
*In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995).  This Court must therefore
determine, viewing the evidence in the light most favorable to the party opposing
summary judgment, whether there are any genuine issues of material fact and whether the
bankruptcy court correctly applied the relevant substantive law.  Once the moving party
meets that initial burden, the burden shifts to the party opposing summary judgment to
come forth with specific evidence to show that a genuine issue of material fact exists.
Fed. R. Civ. P. 56(e)(2) (incorporated by Fed. R. Bankr. P. 7056); *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323-25 (1986).  Debtor has presented no such evidence.

---

[4]Debtor's opening brief states his view that it would have been more appropriate to have
this appeal heard by the Bankruptcy Appellate Panel ("BAP") than this Court, because of the
former's "extensive familiarity with dischargeability issues."  AOB at 2.  Appellees believe that
this Court is well equipped to assess questions of Delaware law, which are at the heart of this
appeal (*see* Ex. A hereto at 1:21-24) and is both familiar with and fully capable of addressing
dischargeability issues that are related thereto.

## STATEMENT OF THE CASE

### I.    THE DELAWARE ACTION.

The Delaware Chancery Court's findings are issue preclusive in this adversary proceeding, as the bankruptcy court held.  ER Tab 17 at 4:9-5:4.  Debtor did not challenge that holding in his AOB, or his Statement of Issues on Appeal (*see* Ex. B hereto), so that issue is not before this Court.  In any event, the bankruptcy court is correct.  *See In re Zachary Shultz*, 205 B.R. 952, 955 (Bankr. D.N.M. 1997); *In re Dawley*, 312 B.R. 765, 776 (Bankr. E.D. Pa. 2004).

On June 3, 2004, ATR commenced an action in the Delaware Chancery Court against Debtor, Araneta and Berenguer—the directors of the Delaware Holding Company—entitled *ATR-Kim Eng Financial Corp., et al. v. Carlos R. Araneta, Hugo Bonilla, et al.*, C.A. No. 489-N (Del. Ch. 2006).  ER Tab 1 Ex. A at *7.  ATR asserted claims for damages against these directors for breaches of their fiduciary duty to ATR.

After a trial of that action, the Delaware Chancery Court issued a lengthy Memorandum Opinion articulating its findings of fact and conclusions of law.  ER Tab 1 Ex. A.[5]  As further detailed therein, Araneta "breached his duty of loyalty by impoverishing the Delaware Holding Company for his own personal enrichment" and Debtor and Berenguer also breached their fiduciary duties to ATR because of their complicity in Araneta's misfeasance:  "Having assumed the important fiduciary duties that come with a directorship in a Delaware corporation, [Debtor] Bonilla and Berenguer acted as—no other word captures it so accurately—stooges for Araneta, seeking to please him and only him, and having no regard for their obligations to act loyally towards the corporation and all of its stockholders."  *Id.* at *1.

Although Debtor makes some effort to characterize his involvement in the looting

---

[5]This Section is based entirely on the comprehensive findings of the Delaware Chancery Court in that Memorandum Opinion.  In the interests of expedition, those findings will not be repeated here in as much detail as in the excerpts of record.  *See, e.g.*, ER Tab 4 at 3:21-8:18.

of the assets of the Delaware Holding Company as more "passive" and less blameworthy than that of Araneta (AOB at 4-6), the record of Debtor's malfeasance and the conscious disregard of his duties is extensive.  Among other things, the Delaware Chancery Court found that Debtor was a director of the Delaware Holding Company at all relevant times (ER Tab 1 Ex. A at *9), that "[o]ne cannot accept the important role of director in a Delaware corporation and thereafter consciously avoid any attempt to carry out one's duties" (*id.* at *19), that "[o]ne of the most important duties of a corporate director is to monitor the potential that others within the organization will violate their duties," but that Debtor and Berenguer never "considered, let alone implemented," any monitoring system to detect such violations (*id.* at *19-*20).  The Delaware court further found as follows:

> [B]oth Berenguer and [Debtor] Bonilla testified that they entirely deferred to Araneta in matters relating to the Delaware Holding Company. . . .  Bonilla . . . explain[ed] that to him Araneta and the Delaware Holding Company were basically one and the same and that he took the word of Araneta as being the word of the company.  [Citation.]  Moreover, when pressed regarding whether he would undertake an independent inquiry if told to act by Araneta, Bonilla responded, "Why should I ask him all these questions?  He's telling me they have already agreed . . . .  It's not like I'm going to go out there and check on him, doesn't make sense."  [Citation] . . . .

> Put in plain terms, it is no safe harbor to claim that one was a paid stooge for a controlling stockholder.  Berenguer and Bonilla voluntarily assumed the fiduciary roles of directors of the Delaware Holding Company.  For them to say that they never bothered to check whether the Delaware Holding Company retained its primary assets and never took any steps to recover the LBC Operating Companies once they realized that those assets were gone is not a defense.  To the contrary, it is a confession that they consciously abandoned any attempt to perform their duties independently and impartially, as they were required to do by law.  Their behavior was not the product of a lapse in attention or judgment; it was the product of a willingness to serve the needs of their employer, Araneta, even when that meant intentionally abandoning the important obligations they had taken on to the Delaware Holding Company and its minority stockholder, ATR.  (ER Tab 1 Ex. A at *20-*21 (footnote omitted))

Debtor also helped to conceal Araneta's and his own wrongdoing.  When ATR, "[s]tarved for information," brought an action seeking to compel disclosures, Araneta told Debtor, "Don't mind it," and instructed him "not to provide the requested information."  ER Tab 1 Ex. A at *6 & n.28.  No information was provided until ATR

obtained a court order requiring disclosure of corporate records, and only after ATR deposed Debtor were the most damning documents turned over. ER Tab 1 Ex. A at *6.

The Delaware Chancery Court's Final Judgment (ER Tab 1 Ex. B) held Debtor, Araneta and Berenguer jointly and severally liable for damages to ATR in the amount of $24,490,422.50, plus post-judgment interest accruing at a rate of 11.25 percent per annum. *Id.* at 1-2. That judgment is now final for all purposes.[6]

## II.    THE INSTANT BANKRUPTCY PROCEEDINGS.

On March 16, 2007, Debtor filed his voluntary Chapter 7 petition. ATR timely filed this adversary proceeding and in the Fourth Claim for Relief, the subject of this appeal, ATR seeks a determination that the debt arising from the Delaware court's Final Judgment is nondischargeable because it arises from "fraud or defalcation while acting in a fiduciary capacity," under Section 523(a)(4).[7] ER Tab 1 at 13 ¶76. On August 31, 2007, Debtor filed a motion to dismiss this claim, arguing that there is no basis to find Debtor a fiduciary under that statute. After briefing and a regularly noticed hearing, the bankruptcy court issued a memorandum decision denying that motion (ER Tab 7) and finding that Debtor, when acting in his capacity as a director of a Delaware corporation, was a fiduciary within the meaning of Section 523(a)(4).

The court noted that "[w]hether a debtor is a fiduciary within the meaning of Section 523(a)(4) is a question of federal law," which requires that: (a) the debtor must have been subject to the duties of a trustee before, and without reference to, the wrongdoing that gave rise to the debt and (b) the duties imposed on the debtor must be those imposed on the trustee of an express or technical trust. Thus, there must be an

---

[6]The Delaware Supreme Court affirmed the Final Judgment in a two-page summary decision "on the basis of and for the reasons assigned by the Court of Chancery in its [Memorandum Opinion] decision dated December 21, 2006." ER Tab 1 Ex. C. at 1-2. On January 29, 2007, ATR entered the Final Judgment of the Delaware Chancery Court in California in Alameda County Superior Court, as a sister-state judgment. *See* ER Tab 10 Ex. 4.

[7]The Complaint in this adversary proceeding also seeks a declaration that Debtor is not entitled to a discharge, in three additional claims. ER Tab 1.

identifiable trust *res*, identifiable beneficiaries and the debtor must be subject to the duties of loyalty, good faith and honesty in caring for the trust *res*.  ER Tab 7 at 2:10-22.

The court then stated that "[w]hether a debtor is subject to the duties just described is primarily a matter of state law" and the requisite duties can be imposed by agreement, state statute, or state case law.  *Id.* at 2:23-3:2.  The court concluded that numerous Delaware decisions refer to directors as trustees, and impose on directors the highest duties of loyalty, honesty and fair dealing in all matters concerning the management of corporate assets.  *Id.* at 3:3-8.  Furthermore, Delaware cases impose this fiduciary duty prior to, and without reference to, any misconduct by the director.  The court quoted from the opinion in *Bodell v. General Gas & Electric Corp.*, 132 A. 442, 447 (Del. Ch. 1926), as follows.

> It is not always necessary for [directors] to reap a personal profit or gain a personal advantage in order for their actions in performance of their quasi trust to be successfully questioned.  Trustees owe not alone the duty to refrain from profiting themselves at the expense of their beneficiaries.  They owe the duty of saving their beneficiaries from loss.  (ER Tab 7 at 3:10-13 (quoting *Bodell*))

Noting that Delaware court decisions do not, however, equate corporate directors with trustees in all respects, and that the courts refer to directors as "trustees," "quasi-trustees" or as not "trustees in every sense," the court (ER Tab 7 at 3:18-4:19) posed the question whether "in addition to preexisting the wrong, the fiduciary duty must be identical to that of a trustee in every technical respect?"  *Id.* at 4:18-19.  The court answered this question in the negative:

> I conclude that the fiduciary duty must preexist the trust, and must be *substantially similar* to the role of a trustee, in that there must be a trust *res*, identifiable beneficiaries, and clear notice of the duties of loyalty, honesty, and fair dealing toward the beneficiaries in all matters affecting the trust *res*. In *[In re] Lewis*, [97 F.3d 1182, 1185 (9th Cir. 1996)] the Ninth Circuit found partners to be fiduciaries under section 523(a)(4) upon the basis of state-court decisions that imposed on partners the duties of loyalty, honesty, and fair dealing. One of the decisions *Lewis* relied upon described the duties of a partner as merely "similar to a trustee's," and the other decisions cited failed to use the term trustee at all in describing the duties of a partner. In addition, *Lewis* noted with approval language in Collier stating that the duties of the fiduciary need only be "substantially similar" to those imposed on trustees. [Quotation omitted.]

As noted above, the director of a corporation organized under Delaware law is subject to duties substantially similar to those imposed on the trustee of an express or technical trust, and those duties arise before and without reference to any wrongdoing. The director of a Delaware corporation is therefore a fiduciary within the meaning of section 523(a)(4). (ER Tab 7 at 4:20-5:7 (footnote and citations omitted; emphasis added))

Debtor filed a motion for reconsideration of the court's ruling on his motion to dismiss. ER Tab 8. ATR filed a motion for summary judgment based on the court's ruling that Debtor is a fiduciary within the meaning of Section 523(a)(4). These two motions were heard together and on December 17, 2007, the bankruptcy court issued a Memorandum Re Defendant's Motion For Reconsideration And Plaintiffs' Motion For Summary Judgment. ER Tab 17. That Memorandum states in part:

Defendant first argues that this court did not give proper deference to the decision of the Ninth Circuit in *Cal-Micro, Inc., v. Cantrell (In re Cantrell)*, 329 F.3d 1119 (9th Cir. 2003). Because *Cantrell* relied upon a California Supreme Court decision stating that a corporate officer is an agent rather than a trustee under California law, I find *Cantrell* to be of little relevance to the present case involving a Delaware director.

Defendant next argues that the decisions of the Delaware Supreme Court imposing trustee-like duties on corporate directors are inapposite because they involved instances in which the corporation was insolvent or the director improperly benefited from the act in question. This argument is unpersuasive for two reasons.

First, Defendant cites no Delaware decision holding that a corporate director has trustee-like duties *only* where the corporation is insolvent or the director benefits. At the same time, a decision of the Delaware Chancery Court imposed trustee-like duties on corporate directors where there was no showing of insolvency or improper benefit. *Bodell v. General Gas & Electric Corp.*, 132 A. 442, 447 (Del. Ch. 1926).

Second, a recent decision of the Delaware Supreme Court holds that the fiduciary duties owed shareholders are the same as those owed creditors upon insolvency.

It is well settled that directors owe fiduciary duties to the corporation. When a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring *derivative* actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is *insolvent*, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value.

\* \* \*

-10-

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007) (emphasis and quotations in original) (footnotes omitted). In this context, the Delaware decisions holding that directors become trustees for creditors upon insolvency become direct support for the conclusion that directors are trustee[s] for shareholders while the corporation is solvent.

Defendant argues finally that this court erred in relying upon the "substantially similar" test stated in *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182 (9th Cir. 1996), asserting that *Lewis* is an "anomaly" among Ninth Circuit decisions otherwise interpreting section 523(a)(4) very narrowly. This court is persuaded that the functional approach of *Lewis* is sound. Reliance on formalistic taxonomy has lead the Ninth Circuit to the somewhat curious conclusion that a director of a California corporation is a fiduciary for creditors when the corporation is insolvent,[1] but is not a fiduciary for the director's[2] prime constituents, shareholders, when the corporation is not insolvent.[2] *North American Catholic* [*Gheewalla*], decided by the court most widely recognized for its expertise in corporate governance, suggests that a functional, interest-based approach is appropriate for any analysis of the fiduciary duties of a director under Delaware law.

[1] *Lawrence T. Lasagna, Inc. v. Foster*, 609 F.2d 392, 396 (9th Cir. 1979) (director of insolvent corporation organized under California law is fiduciary for purposes of section 35(a)(4), predecessor to section 523(a)(4)); *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 737 (9th Cir. BAP 2001).

[2] *Cantrell*, 329 F.3d at 1127. (ER Tab 17 at 2:5-4:7 (emphases in original))

Having found that Debtor is a "fiduciary" as a matter of law, the Court then ruled that the remaining question is whether his wrongful acts as found by the Delaware Chancery Court amount to a "defalcation." The bankruptcy court ruled that they do, because Debtor, "while acting in a fiduciary capacity," was "unable to account for property placed under his charge, and the property was lost due to [his] failure to follow instructions imposed upon him by law regarding the protection of that property." ER Tab 17 at 4:22-5:4 (citing *In re Niles*, 106 F.3d 1456, 1460-62 (9th Cir. 1997)).

## ARGUMENT

**I. THE UNDISPUTED FACTS, IN CONJUNCTION WITH THE FINDINGS OF THE DELAWARE COURT, ESTABLISH THAT DEBTOR IS A "FIDUCIARY" WITHIN THE MEANING OF SECTION 523(a)(4).**

Debtor argues that by requiring that the duties of a Delaware corporate director be merely "substantially similar" to those of a trustee, the bankruptcy court fashioned an entirely new test, and departed from governing law in the Ninth Circuit. Debtor also

contends that there was no pre-existing "trust" relationship between the Debtor and ATR of the type required by Section 523(a)(4). Debtor is wrong on both counts.

**A.   A "Fiduciary" Capacity Includes Not Only A Formal Written Or Statutory Trust But Also Any Sufficiently Similar Trust-Like Relationship.**

The Bankruptcy Code does not define the word "fiduciary."[8]  Whether a relationship is a "fiduciary" one within the meaning of Section 523(a)(4) is a question of federal law, but that determination relies upon whether the requisite trust relationship exists under state law. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986).

**1.   Not every relationship of trust amounts to a fiduciary relationship under Section 523(a)(4).**

In a seminal case the Supreme Court held that "a factor, who retains the money of his principal," is not a "fiduciary" because "[i]f the act embrace such a debt, it will be difficult to limit its application," and although commercial transactions involve an element of trust, the word "fiduciary" must be construed to speak of "technical trusts" not "those which the law implies . . . ." *Chapman v. Forsyth*, 43 U.S. 202, 208 (1844). Similarly, Congress cannot have meant to include constructive trusts and other remedies *ex maleficio*[9] to come within the word "fiduciary," because that would also elevate ordinary debts to the status of nondischargeable debts:

> It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto. (*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (construing predecessor to Section 523(a)(4)))

---

[8]Debtor argues, quoting legislative history, that Congress' intent was to "include in the category of non-dischargeable debts a conversion under which the debtor willfully and maliciously intends to borrow property for a short period of time . . . ." AOB at 12 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., at 364) (reprinted in Volume C, COLLIER ON BANKRUPTCY, App. 4(d)(i), at 4-1501 (15th rev. ed. 2006)). That legislative history relates to the *superseded* House of Representatives version of the bill, which only excepted debts for "embezzlement or larceny." *See* 4 COLLIER ¶523.10[1][d] n.6 (quoting House bill H.R. 8200, reprinted in Volume B, COLLIER App. 4(d), at 4-928). The final version of Section 523(a)(4) includes debts for "defalcation while acting in a fiduciary capacity," which is the clause at issue on this appeal.

[9]*Ex maleficio* means, literally, "after the wrongdoing," as opposed to duties imposed before the wrongdoing and without reference thereto. *See Lewis*, 97 F.3d at 1185.

Following these Supreme Court precedents, the lower courts have had to determine which relationships of trust and fidelity amount to "fiduciary" relationships for nondischargeability purposes. The typical terminology is stated by the Ninth Circuit:

> The broad, general definition of "fiduciary" is inapplicable in the dischargeability context. Instead, the fiduciary relationship must be one arising from an *express or technical trust* that was imposed before and without reference to the wrongdoing that caused the debt. (*Lewis*, 97 F.3d at 1185 (citation omitted; emphasis added))

### 2.    What is meant by an "express" or "technical" trust?

Numerous opinions issued by the Ninth Circuit (not just *Lewis*) construe the requirement of an "express" or "technical" trust to require only the exclusion of constructive trusts and other trusts *ex maleficio*, and *not* to require a formal trust document or statutory trust. *See, e.g.*, *In re Hemmeter*, 242 F.3d 1186, 1189-90 (9th Cir. 1991); *Lewis*, 97 F.3d at 1185; *Ragsdale*, 780 F.2d at 796. For this reason, many Ninth Circuit cases refer to "trust-like" obligations (*In re Teichman*, 774 F.2d 1395, 1399 (9th Cir. 1985)), relationships that exhibit "*characteristics* of the traditional trust relationship" (*Hemmeter*, 242 F.3d at 1189-90 (quoting *In re Pedrazzini*, 644 F.2d 756, 758 (9th Cir. 1981) (emphasis added)), and relationships that are "similar" or "substantially similar" to more formal trusts (*Lewis*, 97 F.3d at 1186 & n.1 (citations omitted)).

In *Lewis*, for example, the Ninth Circuit begins the analysis by restating the "express" or "technical" trust requirement but interprets these words essentially to mean ("[i]n other words") the requirement that the fiduciary duties must arise "before and without reference to" the wrongdoing at issue (as opposed to trust duties *ex maleficio*):

> [T]he fiduciary relationship must be one arising from an *express* or *technical* trust that was imposed before and without reference to the wrongdoing that caused the debt. *In other words*,
>
> > It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto. (*Lewis*, 97 F.3d at 1185 (summarizing *Ragsdale* and *Davis*; citations omitted; emphasis added))

*Lewis* then holds that a partner under Arizona law is such a "trustee," *not* because they are formal trustees but because Arizona cases use "similar" language to the California case law in describing the actual duties between partners:

> Arizona case law employs *similar* language [to the California cases] in describing the duties owed between partners. For instance, the Arizona Supreme Court has stated:
>
> > "The relation of partnership is fiduciary in character, and imposes upon the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."
>
> *DeSantis v. Dixon*, 72 Ariz. 345, 236 P.2d 38, 41 (1951) (quoting 68 C.J.S., Partnership, §76). (*Lewis*, 97 F.3d at 1186 (emphasis added))

What is "similar" about Arizona and California case law, as summarized in *Lewis*, is not the use of the word "trustee" but the actual duties imposed on partners. In fact, the word "trustee" appears only once in *Lewis'* summary of Arizona case law: in a quotation stating that a partner's position is "*similar* to a trustee's." *Lewis*, 97 F.3d at 1186 (quoting *Carrasco v. Carrasco*, 422 P.2d 411, 413 (Ariz. Ct. App. 1967) (emphasis added)). In addition, as the bankruptcy court observed, Lewis notes with approval language in *Collier* stating that the duties of the fiduciary need only be "substantially similar" to those imposed on trustees. *Lewis*, 97 F.3d at 1186 n.1 (quoting then-current language in 3 *Collier on Bankruptcy* ¶523.14 n.8 (15th ed. 1996)).

Debtor attempts to characterize *Lewis* as an aberration, but the above-quoted Ninth Circuit decisions show that it is simply one of numerous consistent decisions that speak of "trust-like" obligations and duties "substantially similar" to or "characteristic[]" of a "traditional trust relationship." *Hemmeter*, 242 F.3d at 1190; *Pedrazzini*, 644 F.2d at 758; *Teichman*, 774 F.2d at 1399; *Lewis*, 97 F.3d at 1185-86.

Debtor relies on *Ragsdale* (AOB at 20-22) but that case is entirely consistent with the above analysis. The Ninth Circuit in *Ragsdale* initially refers to an "express" or

"technical" trust but immediately clarifies that the point of these requirements is to eliminate trusts *ex maleficio* (*Ragsdale*, 780 F.2d at 796), and the remainder of the decision takes a functional approach.  First, *Ragsdale* holds that partners are *not* fiduciaries under California *statutory* law, even though the California statute at issue specifically uses the word "trustee"—which shows that Ragsdale goes beyond the mere taxonomy of looking to whether or not state law uses the word "trustee."[10]  Second, *Ragsdale* examines the duties of partners under California case law before concluding that they are fiduciaries under Section 523(a)(4).  *Id.* at 796-97.

The Ninth Circuit's approach is well summarized by the BAP:

> The "technical" or "express" trust requirement includes relationships in which *trust-type* obligations are imposed pursuant to statute *or common law*.

> Accordingly, state statutes and case law are examined to determine whether they impose traditional *trust-like* relationships prior to and without reference to the wrong which created the debt.  (*In re Stanifer*, 236 B.R. 709, 714 (B.A.P. 9th Cir. 1999) (citations omitted; emphasis added))

### 3.    There is nothing controversial in concluding that a "fiduciary capacity" under Section 523(a)(4) includes trust-like duties.

First, if Congress had intended to restrict a "fiduciary" to persons acting as a trustee under a formal trust document or statutory trust it could have said so.  It did not.  Second, the Ninth Circuit's functional approach is the majority view:

> Most courts today . . . recognize that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.  (*In re Bennett*, 989 F.2d 779, 784-85 (5th Cir. 1993), *amended on other grounds*, 1993 WL 268299 (9th Cir. July 15, 1993) (citing Ninth Circuit and other cases)[11])

---

[10]The statute at issue in *Ragsdale* provided at that time:

Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.  (Cal. Corp. Code §15021(1) (West 1977) (as quoted in *Ragsdale*, 780 F.2d at 796))

[11]*See also, e.g.*, *In re Colton*, No. 05-56430-MM, 2007 WL 1615069, at *3 (Bankr. N.D. Cal. June 4, 2007) ("in some instances, a state statute or common law doctrine may impose *trust-like* obligations that are sufficient to satisfy the requirements of an express trust") (emphasis
(continued . . . )

The bankruptcy court aptly summarized the requirements for establishing a "fiduciary" duty under Section 523(a)(4):

> I conclude that the fiduciary duty must preexist the trust, and must be *substantially similar* to the role of a trustee, in that there must be a *res*, identifiable beneficiaries, and clear notice of the duties of loyalty, honesty, and fair dealing toward the beneficiaries in all matters affecting the trust *res*. (ER Tab 7 at 4:20-24 (emphasis in original))

In light of the longstanding practice in the Ninth Circuit and elsewhere to apply this functional test, Debtor's assertion that the bankruptcy court erred by creating a wholly "new" test for trust relationships (AOB at 1, 21) clearly has no merit.

### B. As A Director Of A Delaware Corporation, Debtor Owed Trust-Like Obligations To The Corporation's Shareholders.

Having determined that the existence of an express or technical trust could be established by relevant (in this case, Delaware) case law, the bankruptcy court then correctly held, as discussed below, that the duties of a director under Delaware law are indeed "substantially similar" to the role of a formal trustee, that there is a trust *res* (the corporation's assets) and that Debtor had clear notice of his duties of loyalty, honesty and fair dealing towards the stockholders. ER Tab 7, 17, 22 at 7:3-8, 9:1-10:20.

#### 1. Delaware law has historically imposed "trust-like" duties on its directors that are at least as demanding as those in Ninth Circuit cases holding debtors to be "fiduciaries."

A fundamental principle of Delaware law is "that directors are responsible for managing the business and affairs of a Delaware corporation and, in exercising that responsibility, they are charged with an unyielding fiduciary duty to the corporation and its shareholders." *Shamrock Holdings, Inc. v. Polaroid Corp.*, 559 A.2d 257, 269 (Del.

---

( . . . continued)

added); *In re Moskowitz*, 310 B.R. 21, 30 (Bankr. E.D.N.Y. 2004) ("Technical or express trusts include relationships where trust-type obligations are imposed pursuant to statute or common law"); *In re Cook*, 263 B.R. 249, 255 (Bankr. N.D. Iowa 2001) ("[t]he 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law"); *In re Sullivan*, 217 B.R. 670, 675 (Bankr. D. Mass. 1998) ("A technical trust is a trust that is imposed by law and may arise either by statute or common law").

Ch. 1989) (internal quotations omitted).[12]  That "unyielding fiduciary duty" includes the subsidiary duties of care, loyalty and good faith (*Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)) and grows directly from the experience of Delaware courts interpreting the law of trusts.  "[T]he fiduciary duty of corporate directors is a court created duty that historically springs from equity's experience with trusts and trustees."  *Hynson v. Drummond Coal Co.*, 601 A.2d 570, 575 (Del. Ch. 1991); *see also In re Zachary Shultz*, 205 B.R. 952, 958 (Bankr. D.N.M. 1997) ("Delaware courts have held corporate directors to high fiduciary standards and have even described the fiduciary obligation in terms of a trust").  Indeed, directors are often referred to as "trustees" by Delaware courts.  *See, e.g.*, *Keenan v. Eshleman*, 2 A.2d 904, 908 (Del. 1938) ("As directors, they [the defendants therein] were trustees for the stockholders, and the utmost good faith and fair dealing was exacted of them").  Even if directors are not trustees in every respect,[13] the courts of that state have long analogized directors' obligations to those of trustees:

> Clearly directors of a corporation *stand in a position of trustees* with the stockholders, *Lofland v. Cahall*, 13 Del.Ch. 384, 118 A. 1 (1922); *Bowen v. Imperial Theaters, Inc.*, . . . 13 Del.Ch. 120, 115 A. 918 (1922), and the utmost good faith and fair dealing are required of them, especially where their individual interests are concerned.  (*Petty v. Penntech Papers, Inc.*, 347 A.2d 140, 143 (Del. Ch. 1975) (emphasis added))

---

[12]*See also Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)*; Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 938 (Del. 2003) ("The fiduciary duties of a director are unremitting"); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. Ch. 1939) (director's duties include the "most scrupulous observance of his duty" to "protect the interests of the corporation committed to his charge").  A Delaware director's fiduciary duties are also recognized by the statutes of that state. *See, e.g.*, 8 Del. Code §102(b)(7) (a certificate of incorporation may contain "[a] provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of *fiduciary duty* as a director . . .") (emphasis added).

[13]For example, for purposes of self-dealing (which is not an issue as to the Debtor in this case), Delaware law has different standards for corporate directors and trustees.  *See Stegemeier v. Magness*, 728 A.2d 557, 562 (Del. 1999) (directors are not "equated" with trustees for purposes of self-dealing and can engage in self-dealing if their actions are approved by the board or shareholders).  Similarly, courts have held that the relationship between a corporate director and a shareholder is not as "thoroughly rooted" in the concepts of reliance and trust as a pure trustor-trustee relationship might be.  *Price v. Wilmington Trust Co.*, No. Civ. A. No. 12476, 1996 WL 451318, at *4 (Del. Ch. Aug. 6, 1996), *aff'd*, 692 A.2d 416 (Del. 1997); *see also Price v. Wilmington Trust Co*., No. Civ. A. No. 12476, 1996 WL 560177, at *2 (Del. Ch. Sept. 3, 1996) (noting that directors and trustees are different in the *degree* of trust that the law requires).

Thus, the "unyielding" fiduciary duties that a director of a Delaware corporation owes to the corporation and its shareholders are exactly the kind of "trust-like" obligations that courts rely upon in applying Section 523(a)(4). Indeed, it is hard to imagine a meaningful difference between the obligations imposed on the business partner in *Lewis*—*e.g.*, acting in the "the utmost good faith" toward each other (*Lewis*, 97 F.3d at 1186)—and those that are imposed on corporate directors under Delaware case law. *See Guth*, 5 A.2d at 510 (requiring "the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation"). In both cases, the applicable case law recognized a heightened responsibility, analogous to the law of trusts, that governs the actor's conduct.

### 2. Debtor misconstrues *Cantrell*.

Debtor asserts that the bankruptcy court erred by not "following" the Ninth Circuit's opinion in *Cantrell*. Debtor argues that because the corporate officer therein was found not to be a "trustee" for the corporation's shareholders under *California* law, therefore a director of a *Delaware* corporation (like Debtor) cannot be a trustee under *Delaware* law. But *Cantrell* is entirely inapposite to the questions before this Court.

The Ninth Circuit in *Cantrell* concluded that it was compelled to follow "the California Supreme Court's unambiguous holding in *Bainbridge* that directors and officers are *not* trustees with respect to corporate assets." *Cantrell*, 329 F.3d at 1126 n.4 (emphasis added). *Cantrell* also held that California directors are not fiduciaries because their obligations arise out of the law of *agency* and the corporate assets are not held in trust (or at least, a "statutory" trust, which was the only sort of trust that the plaintiff therein apparently relied upon).[14]

---

[14]*Cantrell*, 329 F.3d at 1125-26 ("while not arguing that an express trust existed between it and Cantrell, Cal-Micro [the party seeking nondischargeability] does claim that under California law a corporate officer is a *statutory* trustee with respect to corporate assets" and "Cal-Micro cites to several California cases that have held that a corporate officer is a fiduciary of the

(continued . . . )

Delaware courts, by contrast, have explicitly rejected the notion that corporate directors are agents of the corporation,[15] and numerous Delaware courts have held that corporate assets *are* held in trust or quasi-trust and that directors *can be* trustees or quasi-trustees. Nothing in *Cantrell* is contrary to the bankruptcy court's analysis.[16]

### 3. Debtor is incorrect in suggesting that the Delaware Supreme Court's decision in *Bovay* silently overrules the earlier *Bodell* decision.

Debtor also ascribes "error" to the bankruptcy court's reliance on *Bodell*, 132 A. 442, 447, as authority for the proposition that Delaware law imposes "trust-like duties" on corporate directors, rather than on the later-decided Delaware Supreme Court which stated that directors of Delaware corporations are not trustees in "all" of their relations with shareholders. *Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808, 813 (Del. 1944).

---

( . . . continued)
corporation. But these cases merely specify that officers owe fiduciary duties in their capacity as *agents* of a corporation; they fail to hold that officers are trustees of a *statutory* trust with respect to corporate assets" (emphasis added; citations omitted).

[15]*See Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539-40 (Del. 1996) ("Directors . . . do not act as agents of the corporation . . . . A board of directors, in fulfilling its fiduciary duty, controls the corporation, not vice versa) (citations and footnote omitted); *accord Zachary Shultz*, 205 B.R. at 959 (holding that "it would be an analytical anomaly to treat corporate directors as agents of the corporation [under Delaware law] when they are acting as fiduciaries of the stockholders in managing the business and affairs of the corporation"). This facet of Delaware law also has been recognized by the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1021 (9th Cir. 1997) ("Under Delaware's corporations law, however, the board of directors directs the affairs of the business but is not an agent of the corporation").

[16]This Court should also reject Debtor's invitation to conclude that because (a) *Cantrell* held that directors of California corporations are not trustees, and (b) some California cases have stated that some of the fiduciary duties imposed on directors of Delaware corporations are similar to the duties of directors of California corporations (*e.g.*, *Prof'l Hockey Corp. v. World Hockey Ass'n*, 143 Cal. App. 3d 410, 414 (1983)), *therefore* it must be true that directors of Delaware corporations are not trustees. AOB at 17. As the Bankruptcy Court held, and as is demonstrated herein, numerous cases in Delaware have established that directors of Delaware corporations have duties that are at least substantially similar to a trustee's duties, and this Court can review and interpret those authorities without resort to the Debtor's "transitive" theories of precedence. As Debtor himself admits (AOB at 16), the Delaware Supreme Court has recently stated that directors' fiduciary duties stem from their "quasi-trustee" relationship with shareholders. *Schoon v. Smith*, No. 554, 2006, —A.2d—, 2008 WL 375826, at *5 (Del. Feb. 12, 2008). That statement was *dicta* (the holding of the case was that directors do not have standing to sue derivatively), but in making that statement *Schoon* was quoting *Guth*, 5 A.2d at 510, which requires of a director "the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation."

However, a review of Delaware case law demonstrates that numerous courts have held that corporate directors occupy trust-like positions.

For example, the Delaware Supreme Court recently held that "efforts by a fiduciary to escape a fiduciary duty, whether by a corporate director or officer *or other type of trustee*, should be scrutinized searchingly." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 168 (Del. 2002) (emphasis added). This follows the long-standing rule that "[t]he officers and directors of a Delaware corporation *are trustees for its stockholders* under Delaware law." *Beneficial Indus. Loan Corp. v. Smith*, 170 F.2d 44, 57 (3d Cir. 1948), *aff'd*, 337 U.S. 541 (1949) (emphasis added).

It is true that, as *Bovay* states, directors are not necessarily trustees "in a strict and technical sense, in *all* of their relations with the corporation, its stockholders and creditors." *Bovay*, 38 A.2d at 813 (emphasis added) (holding that directors are not trustees of an express trust and therefore can benefit from the statutes of limitations applicable to claims in a court of law, rather than equity). But just as clearly "[t]he language of the Court is to be interpreted in the light of the situations presented" (*id.* at 813) and in many situations directors are regarded as trustees or quasi-trustees, particularly where there are no questions of business judgment involved. For example, "directors are regarded as trustees in the matter of the disposal of unissued stock" and "[i]t is not always necessary for them to reap a personal profit or gain a personal advantage in order for their actions in performance of their quasi trust to be successfully questioned." *Bodell*, 132 A. at 444, 446 (issuance of "additional shares of such stock at less than the fair value thereof" violated directors' duty) (citations omitted). Accordingly, as the bankruptcy court itself noted, a strict reading of the opinion in *Bovay* as suggested by the Debtor ignores both the flexible approach taken by that court as well as the particular context of that ruling, and it is inaccurate to assert, as Debtor does, that

*Bovay* overrules *Bodell* and the numerous other Delaware cases holding that corporate directors occupy trust-like positions.[17]

###     4.     Debtor misapprehends the analogy to *Gheewalla*.

Debtor also asserts that it was error for the bankruptcy court to rely on the recent Delaware case *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007) ("*Gheewalla*") for the proposition that Delaware directors are imposed with trustee-like duties, because the case neither held that corporate directors are trustees nor did it "expand" director's duties.  AOB at 19; ER Tab 17 at 2:25-3:19.  However, the Debtor misapprehends the bankruptcy court's point.

*Gheewalla* held that while creditors of an insolvent corporation do not have standing to assert direct claims against the directors, they would have standing to assert derivative claims against directors, similar to the derivative claims that shareholders would have were the corporation solvent.  *Gheewalla*, 930 A.2d at 101-02.  Because numerous cases hold that directors, upon insolvency, hold the assets of the corporation in trust for the creditors, and because *Gheewalla* holds that the scope of that duty is no different whether the corporation is solvent or insolvent (the duty merely runs to a different constituency—creditors instead of shareholders), the bankruptcy court concluded, logically, that *Gheewalla* strongly supports the proposition that the directors

---

[17]*See, e.g.*, *Gotham Partners*, 817 A.2d at 168; *Beneficial Indus. Loan Corp. v. Smith*, 170 F.2d at 57; *Bodell*, 132 A. at 444, 446; *In re Shoe-Town, Inc. Stockholders Litig.*, No. C.A. No. 9483, 1990 WL 13475, at *7 (Del. Ch. Feb. 12, 1990) (characterizing directors as "quasi trustees[;] . . . a director will be held as a trustee for the corporation he has undertaken to represent") (citations omitted); *Grace v. Morgan*, No. Civ. A 03C05260JEB, 2004 WL 26858, at *2 (Del. Super. Jan. 6, 2004) (holding that the "classic examples" of "a special relationship of trust [that] exist[s] between the parties sufficient to establish the fiduciary duty" include "the trustee responsible for the trust *res* for the beneficiary and the corporate officer or director responsible to shareholders"); *Prestancia Mgmt. Group, Inc. v. Virginia Heritage Found., II LLC*, No. Civ. A. 1032-S, 2005 WL 1364616, at *6 (Del. Ch. May 27, 2005) (same).

Although courts are not unanimous on the issue, numerous courts applying the laws of other states agree that corporate directors are fiduciaries for purposes of Section 523(a)(4).  *See, e.g.*, *Meyer v. Rigdon*, 36 F.3d 1375, 1382 (7th Cir. 1994); *In re Hammond*, 98 F.2d 703, 705 (2d Cir. 1938); *In re Snyder*, 101 B.R. 822, 835 (Bankr. D. Mass. 1989), *aff'd in part & rev'd in part on other grounds sub nom. Bornstein v. Snyder*, 923 F.2d 840 (1st Cir. 1990).  *See also* ER Tab 4 at 17 n.10 (citing and quoting additional cases).

have trustee-type duties to the shareholders. In any event, the bankruptcy court's analogy to *Gheewalla* is hardly of consequence given the strong support in the Delaware case law for the proposition that directors are trustees.

### 5. Debtor misconstrues *Caremark*, and the bankruptcy court's brief references to *Caremark*.

Debtor complains that "contrary to" the bankruptcy court's alleged "assertions," *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) does not state explicitly that directors are trustees, or that the corporation's assets are the trust *res*, and does not specifically use the term "trust." AOB at 17-18. This argument is without merit.

As an initial matter, it is at least anomalous for the Debtor to complain about the bankruptcy court's reliance on a case that the court neither cited nor referred to in its written decisions or judgment (ER Tabs 7, 17, 18, 19) and that it referred to only briefly at oral argument. ER Tab 22 at 9:8, 12:3. Moreover, assuming that the bankruptcy court "relied" on *Caremark*, Debtor's criticism still misses the mark.

The point of the bankruptcy court's mention of *Caremark* during oral argument was that corporate directors have a duty to monitor for wrongdoing, which is merely one aspect of their fiduciary duties under Delaware law. ER Tab 22 at 8:4-9:13. *Caremark*'s refinement of these duties does not obviate the overarching concept that Delaware directors "know very, very clearly that they have fiduciary duties. They know very clearly that what they're charged with is the care and management of corporate property." *Id.* at 9:1-4. The "trust-like" nature of directors' duties has been set forth in numerous Delaware cases preceding *Caremark*, which remain controlling. It is anomalous for Debtor to argue (AOB at 12) that some documentary "notice" of those duties was required, and the sole case on which Debtor relies for that proposition (*In re Heilman*, 241 B.R. 137 (Bankr. D. Md. 1999)), specifically acknowledges that it is out of step with "a majority of decisions," including Ninth Circuit authority, which recognize that trusts

can be imposed by law, not just by contract. *Id.* at 160 & n.19 (citing, *inter alia*, *Ragsdale*, 790 F.2d at 796-97 and *In re Short*, 818 F.2d 693 (9th Cir. 1987)).

Nor is it of any consequence that *Caremark* and the Delaware Chancery Court's opinion did not use the word "trustee" or expressly hold that the corporate assets were held in "trust." It is the underlying facts, not the terminology, that have preclusive effect. To search for the word "trustee" in the Delaware court's opinion is to engage in exactly the sort of "taxonomy" that impedes any intelligent analysis of the issue.

Debtor also argues that *Caremark*'s limitations on directors' liability are "inconsistent" with a holding that directors are trustees of the corporate assets. AOB at 18. Debtor points to directors' protection from liability *if* they establish an adequate system to detect wrongdoing, and the fact that *Caremark* does not require directors to possess "detailed information about all aspects of the operation of the enterprise." *Caremark*, 698 A.2d at 971. Debtor confuses the absence of some sort of absolute strict liability with exoneration from exercising *any* fiduciary duties. No court has adopted strict liability for directors, and both *Caremark* and the bankruptcy court give great deference to any exercise of business judgment (*id.*; ER Tab 22 at 9:1-13). But that does not excuse Debtor from "consciously" disregarding even the most basic duty to protect minority shareholders from the *de facto* liquidation of the business and the transfer of its assets to the majority shareholder's family without consideration. This goes "well beyond the poor exercise of business judgment." ER Tab 7 at 6:8. Accordingly, there is no inconsistency between *Caremark* and Debtor's liability under Section 523(a)(4).

### C.    There Is A Trust *Res* And A Beneficiary In This Case.

Debtor's opening brief never actually argues or cites authority that there is no trust *res*. Therefore, that issue is waived. *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995) (issues not raised and argued in the opening brief need not be considered).

In any event, if Debtor were to renew his arguments before the bankruptcy court on this issue he would be wrong. *First*, courts have held that in cases such as this, in which

a trust-type obligation is imposed pursuant to common law, the trust *res* will be "implied" in order to give effect to Section 523(a)(4). *See Stanifer*, 236 B.R. at 715.

*Second*, there *is* an identifiable trust "*res*" in this case, namely, the assets of the Delaware Holding Company that Debtor permitted Araneta to divert. *See, e.g.*, *Zachary Shultz*, 205 B.R. at 959 ("the Court finds Shultz, as a director of Miramar, was under a fiduciary obligation to the corporation for the management of the corporation and its assets, *which can be considered to constitute the* res *of a technical trust*") (emphasis added); *In re Sax*, 106 B.R. 534, 539 (Bankr. N.D. Ill. 1989) ("By agreeing to become a director of the Bank, Sweeney agreed to use the trust *res*, the Bank's resources, solely for the advantage of the Bank and not for any personal gain").

Moreover, although those assets belonged to the corporation in the first instance, ATR, as a minority shareholder, had an indirect ownership interest in them as well, at least to the extent that dissipating those assets would diminish the value of ATR's shareholdings. *See, e.g.*, ER Tab 1 Ex. A at *21 ("The major breach of fiduciary duty in this case is one that injured the Delaware Holding Company in the first instance and ATR secondarily as a minority stockholder"); *id.* (ATR suffered injury by "entrusting its capital to the Delaware Holding Company").

*Finally*, as minority shareholders, Appellees were "beneficiaries" of the "trust *res*." *See Zachary Schultz*, 205 B.R. at 958; *Snyder*, 101 B.R. at 835; *Gheewalla*, 930 A.2d at 101. In fact, the Delaware court predicated its award "on the need to make ATR whole for the injury it suffered *by entrusting its capital* to the Delaware Holding Company, only to see that corporation impoverished by the defendants." ER Tab 1 Ex. A at *21 (emphasis added). This and similar findings in the Chancery Court's opinion make explicit what should otherwise be obvious: Appellees—minority shareholders in a company with only one other shareholder—were beneficial owners of the corporate assets, assets that had been entrusted to the directors of the corporation, including Debtor.

**CONCLUSION**

Debtor voluntarily assumed the fiduciary duties of a corporate director under Delaware law and, particularly in relation to minority shareholders such as Appellees, such duties are those of a trustee or at least trust-like.  Those duties made Debtor a "fiduciary" within the meaning of Section 523(a)(4) because (a) such duties were imposed before the occurrence of and without reference to Debtor's wrongdoing and (b) such duties are "substantially similar" to those under a more formal trust, because there was an identifiable trust *res* (the corporation's assets) and identifiable beneficiaries (the shareholders), and Debtor was subject to the duties of loyalty, good faith and honesty in caring for the trust *res*.  Debtor committed defalcation by consciously disregarding those duties thereby allowing Araneta to transfer the assets of the Delaware Holding Company to his relatives for no consideration.  For the reasons given above, this Court should affirm the bankruptcy court's Rule 54(b) Judgment, which grants summary judgment in favor of Appellees on their Fourth Claim for Relief.

DATED:  May 27, 2008.

Respectfully,

MICHAEL J. BAKER
WILLIAM J. LAFFERTY
NEIL W. BASON
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

By:  */s/* William J. Lafferty
        WILLIAM J. LAFFERTY

*Attorneys for Appellees ATR-KIM ENG*
*FINANCIAL CORPORATION and ATR-KIM*
*ENG CAPITAL PARTNERS, INC.*

W03 052708-170140001/Y10/1501042/F

# EXHIBIT A

United States District Court
For the Northern District of California

1
2
3
4
5
6                          IN THE UNITED STATES DISTRICT COURT
7
8                       FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   ATR-KIM ENG FINANCIAL                        No. C 08-01062 WHA
11   CORPORATION and ATR-KIM ENG
     CAPITAL PARTNERS, INC.,
12                Plaintiffs,
                                                  ORDER DENYING
13        v.                                      DEFENDANT'S REQUEST TO
                                                  CERTIFY APPEAL TO THE
14   HUGO N. BONILLA,                             NINTH CIRCUIT
15                Defendant.
16   _____/
17          While the Court has jurisdiction to certify this bankruptcy appeal under 28 U.S.C.
18   158(d)(2), the Court is not required to do so. Even if the certification was granted, the circuit
19   court would still have to grant the petition for review. In the experience of the undersigned, this
20   rarely occurs. The result would be a delay in resolving this matter and a waste of resources. In
21   addition, from experience, it is best if the district judge makes a stab at answering the legal
22   question. This will at least frame the issue for the court of appeals. There is no exigency here.
23   The issue has not been presented to the Ninth Circuit because it involves a question of Delaware
24   law. Therefore, defendant's request to certify the appeal to the Ninth Circuit is **DENIED**.
25
26          **IT IS SO ORDERED.**
27
28   Dated: March 5, 2008.
                                                  _____
                                                  WILLIAM ALSUP
                                                  UNITED STATES DISTRICT JUDGE

# EXHIBIT B

1   MACDONALD & ASSOCIATES
    IAIN A. MACDONALD (State Bar No. 051073)
2   HEATHER A. CUTLER (State Bar No. 217837)
    221 Sansome Street
3   San Francisco, CA  94104
    Telephone: (415) 362-0449
4   Facsimile: (415) 394-5544

5   Attorneys for Defendant,
    HUGO NERY BONILLA

6

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10
    In Re:                                    Case No. 07-30309
11
    HUGO NERY BONILLA,                        Chapter 7
12
                    Debtors.
13
    ─────────────────────────────
14  ATR-KIM ENG FINANCIAL                     Adversary Proceeding No. 07-03079
    CORPORATION and ATR-KIM ENG
15  CAPITAL PARTNERS, INC.,                   DESIGNATION OF RECORD AND
                                              STATEMENT OF ISSUES ON APPEAL
16                  Plaintiffs,

17                  vs.

18  HUGO NERY BONILLA,

19                  Defendant.
    ─────────────────────────────
20
                        **DESIGNATION OF RECORD**
21
            Appellant Hugo Nery Bonilla designates the following for inclusion on the record on appeal:
22
            1.      Complaint (1) to determine that Debtor Hugo Bonilla is Not Entitled to a Discharge in
23
    Bankruptcy Pursuant to 11 U.S.C. § 727(a) and (2) Seeking Determination of Non-Dischargeability
24
    of Debt Pursuant to 11 U.S.C. § 523(a)(4)
25
            2.      Motion to Dismiss Complaint
26
            3.      Memorandum of Points and Authorities Supporting Motion to Dismiss Complaint
27
            4.      Memorandum of Points and Authorities in Opposition to Defendant's Motion to
28
    Dismiss Fourth Cause of Action Pursuant to Federal Rule of Civil Procedure 12(b)(6)

                                                                                                  1
    ─────────────────────────────────────────────────────────────────────
            DESIGNATION OF RECORD AND STATEMENT OF ISSUES ON APPEAL

1    5.    Reply in Support of Motion to Dismiss Complaint

2    6.    Tentative Ruling Re Motion to Dismiss Section 523(a)(4) Claim

3    7.    Memorandum re Defendant's Rule 12(b)(6) Motion

4    8.    Motion to Reconsider Order Denying Defendant's Motion to Dismiss Plaintiff's

5    Fourth Claim For Relief

6    9.    Plaintiffs' Notice of Motion and Motion For Summary Judgment on the Fourth Claim

7    For Relief; Memorandum of Points and Authorities in Support Thereof

8    10.    Request For Judicial Notice In Support of Plaintiffs' Motion For Summary Judgment

9    on the Fourth Claim For Relief

10    11.    Declaration of Long X. Do In Support of Plaintiffs' Motion For Summary Judgment

11    on the Fourth Claim For Relief and Request For Judicial Notice

12    12.    Defendant's Opposition to Plaintiffs' Motion For Summary Judgment on the Fourth

13    Claim For Relief

14    13.    Request For Judicial Notice In Support of Defendant's Opposition to Plaintiffs'

15    Motion For Summary Judgment on the Fourth Claim For Relief

16    14.    Plaintiffs' Opposition to the Defendant's Motion to Reconsider Order Denying

17    Defendant's Motion to Dismiss Plaintiffs' Fourth Claim For Relief

18    15.    Plaintiffs' Reply in Support of Motion for Summary Judgment on the Fourth Claim

19    for Relief

20    16.    Defendant's Reply to Plaintiffs' Opposition to Motion to Reconsider Order Denying

21    Defendant's Motion to Dismiss Plaintiffs' Fourth Claim For Relief

22    17.    Memorandum Re Defendant's Motion for Reconsideration and Plaintiffs' Motion for

23    Summary Judgment

24    18.    Order Denying Defendant's Motion for Reconsideration and Granting Plaintiffs'

25    Motion for Summary Judgment on the Fourth Cause of Action

26    19.    Partial Summary Judgment on Fourth Cause of Action and Rule 54(b) Certification

27    20.    Notice Of Appeal On Partial Summary Judgment on Fourth Cause of Action and of

28    Order Denying Defendant's Motion for Reconsideration and Granting Plaintiffs' Motion for

2

1  Summary Judgment on the Fourth Cause of Action

2      21.    Adversary Proceeding Case Docket

3      22.    Transcript of the hearing on December 14, 2007

4      23.    Transcript of the hearing on September 28, 2007

5  **STATEMENT OF ISSUES ON APPEAL**

6      1.    Did the Bankruptcy Court err by ruling that Delaware law imposes fiduciary duties on

7  corporate directors which are "substantially similar" to those held by trustees of express or technical

8  trusts?

9      2.    Did the Bankruptcy Court err by departing from Ninth Circuit precedent, namely, that

10  a debt may only be deemed nondischargeable under 11 U.S.C. § 523(a)(4) if the debtor was a

11  fiduciary to the moving party pursuant to an express or technical trust, by holding that § 523(a)(4)

12  precludes dischargeability of a debt where the debtor's duties were "substantially similar" to those of

13  a trustee of an express or technical trust?

14      3.    Did the Bankruptcy Court err by ruling that Delaware corporate directors are

15  fiduciaries within the meaning of § 523(a)(4)?

16  DATED:  January 17, 2008                  MACDONALD & ASSOCIATES

17

18                            By:        /s/

19                                    Heather A. Cutler, Attorneys for Defendant, Hugo Nery Bonilla

20

21

22

23

24

25

26

27

28

MACDONALD & ASSOCIATES
IAIN A. MACDONALD (State Bar No. 051073)
HEATHER A. CUTLER (State Bar No. 217837)
Two Embarcadero Center, Suite 1670
San Francisco, CA 94111-3930
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor,
HUGO NERY BONILLA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 07-30309 |
| HUGO NERY BONILLA, | Chapter 7 |
| Debtor. | Adv. Proc. No. 07-03079 |
| ATR-KIM ENG FINANCIAL CORPORATION AND ATR-KIM ENG CAPITAL PARTNERS, INC., | |
| Plaintiffs, | CERTIFICATE OF SERVICE |
| vs. | |
| HUGO NERY BONILLA, | |
| Defendant. | |

I, the undersigned, state that I am employed in the City and County of San Francisco, State of

California; that I am over the age of eighteen years and not a party to the within action; that my

business address is Two Embarcadero Center, Suite 1670, San Francisco, California, 94111-3930.

On the date hereon, I served the foregoing document(s) described as:

DESIGNATION OF RECORD AND STATEMENT OF ISSUES ON APPEAL

on the following on this 17th day of January, 2008, at San Francisco, California:

1

CERTIFICATE OF SERVICE



William J. Lafferty, Esq.
Howard Rice Nemerovski Canady
 Falk & Rabkin, 7th Floor
Three Embarcadero Center
San Francisco, CA  94111-4024

____    **(By Personal Service)**  By causing a true copy if said document(s), enclosed in a sealed envelope and addressed below, to be hand delivered.

 X    **(By First Class U.S. Mail)**  By causing a true copy if said document(s), enclosed in a sealed envelope addressed as below and with postage thereon fully prepared, to be placed in United States mail at San Francisco, California.

____    **(By Federal Express)** By causing a true copy if said document(s), enclosed in appropriate packaging and addressed as below and with delivery fee thereon fully prepaid, to be delivered to a Federal Express.

____    **(By Facsimile)**  By causing a true copy if said document(s),to be transmitted by facsimile copying machine to telephone numbers shown below, known by or represented to me to be the receiving telephone number for facsimile copy transmission of the parties/persons/firms listed below.  The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court, at whose direction the service was made and that the foregoing is true and correct.

/s/
Heather A. Cutler

2

1    MICHAEL J. BAKER (No. 56492)
     WILLIAM J. LAFFERTY (No. 120814)
2    NEIL W. BASON (No. 167662)
     HOWARD RICE NEMEROVSKI CANADY
3         FALK & RABKIN
     A Professional Corporation
4    Three Embarcadero Center, 7th Floor
     San Francisco, California  94111-4024
5    Telephone:    415/434-1600
     Facsimile:    415/217-5910
6
     Attorneys for Appellees
7    ATR-KIM ENG FINANCIAL CORPORATION
     and ATR-KIM ENG CAPITAL PARTNERS,
8    INC.

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12

13   In re                              Case No. CV-08-1062 WHA

14   HUGO N. BONILLA,                      (Bankr. Case No. 07-30309)
                                           (Adv. Proc. No. 07-03079)
15                Debtor.
                                        CERTIFICATE OF SERVICE
16
     ATR-KIM ENG FINANCIAL
17   CORPORATION and ATR-KIM ENG        Judge:   Hon. William H. Alsup
     CAPITAL PARTNERS, INC.,
18
                  Appellees,
19
           v.
20
     HUGO NERY BONILLA,
21
                  Appellant.
22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    I, Ashley B. Ray, declare:

2    I am a resident of the State of California and over the age of eighteen years, and not a

3    party to the within action; my business address is Three Embarcadero Center, 7th Floor, San

4    Francisco, California  94111-4024.  On May 27, 2008, I served the following document(s)

5    described as:

6    **APPELLEES' BRIEF**

7
8    ☐    by transmitting via e-mail the document(s) listed above to the e-mail
          address(es) indicated below on this date before 5:00 p.m.

9    ☐    by transmitting via facsimile the document(s) listed above to the fax number(s)
          set forth below on this date before 5:00 p.m.

10
11   ☒    by placing the document(s) listed above in a sealed envelope with postage
          thereon fully prepaid, in the United States mail at San Francisco, California
          addressed as set forth below.

12
13   ☒    by causing personal delivery by First Legal Support Services of the
          document(s) listed above to the person(s) at the address(es) set forth below; or

14
15   ☐    by placing the document(s) listed above in a sealed Federal Express envelope
          and affixing a pre-paid air bill, and causing the envelope to be delivered to a
          Federal Express agent for delivery

16   Iain MacDonald, Esq.                    Michael C. Fallon
17   Heather Cutler, Esq.                    Law Offices of Michael C. Fallon
     MacDonald & Associates                  100 E Street, #219
18   221 Sansome Street                      Santa Rosa, CA 95404
     San Francisco, CA 94104                 *Via US Mail*
     *Via Hand Delivery*
19
20   *[Attorneys for Hugo Bonilla]*          *[Counsel for the Trustee]*

21   I declare under penalty of perjury under the laws of the State of California that the

22   foregoing is true and correct.  Executed at San Francisco, California on May 27, 2008.

23

24                                          _____
                                                  /s/ Ashley B. Ray
25                                                Ashley B. Ray

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*