IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATR-KIM ENG FINANCIAL CORPORATION and ATR-KIM ENG CAPITAL PARTNERS, INC., <br><br>  Appellant, <br><br> v. <br><br> HUGO N. BONILLA, <br><br>  Appellee. _____/ | No. C 08-01062 WHA <br><br> **ORDER AFFIRMING BANKRUPTCY COURT'S RULING** |

## INTRODUCTION

Under 11 U.S.C. 523(a)(4), all debts arising from "fraud or defalcation while [the debtor was] acting in a fiduciary capacity" are nondischargeable. In this bankruptcy appeal, debtor and appellant Hugo Bonilla appeals the bankruptcy court's ruling that his debt arising from his breach of fiduciary duties as a Delaware corporate director was nondischargeable. The question presented is whether a Delaware corporate director is a "fiduciary" within the meaning of Section 523(a)(4). This order **AFFIRMS** the bankruptcy court's ruling.

## STATEMENT

This appeal finds its origins in a Delaware action commenced by Appellees ATR-Kim Eng Financial Corp. and ATR-Kim Eng Capital Partners, Inc., in June 2004 against three directors of the Delaware Holding Company. ATR, as a minority shareholder in DHC, alleged that the majority shareholder and director, Carlos Araneta, looted the company and that the two

other directors, Bonilla and Liza Berenguer, failed to take steps to monitor and prevent the looting. After a full trial, the Delaware Chancery Court issued a memorandum opinion of its findings of fact and conclusions of law, *ATR-Kim Eng Financial Corp. v. Araneta*, 2006 WL 3783520 (Del. Ch. 2006). To quote from the opinion:

> I find that Araneta breached his duty of loyalty by impoverishing the Delaware Holding Company for his own personal enrichment. Bonilla and Berenguer also breached their duty of loyalty. Having assumed the important fiduciary duties that come with a directorship in a Delaware corporation, Bonilla and Berenguer acted as – no other word captures it so accurately – stooges for Araneta, seeking to please him and only him, and having no regard for their obligations to act loyally towards the corporation and all of its stockholders. Such behavior is not indicative of a good faith error in judgment; it reflects a conscious decision to approach one's role in a faithless manner by acting as a tool of a particular stockholder rather than an independent and impartial fiduciary honestly seeking to make decisions for the best interests of the corporation. Although it is clearly the case that Araneta is the most culpable of the defendants, Bonilla and Berenguer are accountable for their complicity in his wrongful endeavors.
>
> \*       \*       \*
>
> [B]oth Berenguer and Bonilla testified that they entirely deferred to Araneta in matters relating to the Delaware Holding Company. Berenguer is, as mentioned, Araneta's niece and served as the CFO for the LBC group of companies worldwide. She testified that she would not insert herself into a disagreement between ATR and Araneta about how the Delaware Holding Company should proceed on an issue because such a disagreement would be between those parties and would not affect her as a director of the Delaware Holding Company. Similarly, she stated that she would take Araneta's word as authoritative if he claimed that he had agreed with ATR to take certain actions. Bonilla, the head of Araneta's U.S. operations, was more explicit – explaining that to him Araneta and the Delaware Holding Company were basically one and the same and that he took the word of Araneta as being the word of the company. Moreover, when pressed regarding whether he would undertake an independent inquiry if told to act by Araneta, Bonilla responded, "Why should I ask him all these questions? He's telling me they have already agreed . . . . It's not like I'm going to go out there and check on him, doesn't make sense."
>
> Based on these failures, neither Berenguer nor Bonilla can be said to have upheld their fiduciary obligations. Although it was Araneta who ran amok by emptying the Delaware Holding Company of its major assets, the other directors did nothing to make themselves aware of this blatant misconduct or to stop it.
>
> Put in plain terms, it is no safe harbor to claim that one was a paid stooge for a controlling stockholder. Berenguer and Bonilla

> voluntarily assumed the fiduciary roles of directors of the Delaware Holding Company. For them to say that they never bothered to check whether the Delaware Holding Company retained its primary assets and never took any steps to recover the LBC Operating Companies once they realized that those assets were gone is not a defense. To the contrary, it is a confession that they consciously abandoned any attempt to perform their duties independently and impartially, as they were required to do by law. Their behavior was not the product of a lapse in attention or judgment; it was the product of a willingness to serve the needs of their employer, Araneta, even when that meant intentionally abandoning the important obligations they had taken on to the Delaware Holding Company and its minority stockholder, ATR.

*Id.* at 2 and 20–21. The court then awarded ATR damages and pre-judgment interest finding each defendant jointly and severally liable for the total amount of the judgment. The court did note, however, that if "if Bonilla and Berenguer pay any or all of the judgment, Araneta should be required to make them whole, to the extent that is consistent with applicable law." *Id.* at 22.

\*         \*         \*

Four months after the decision, Bonilla filed a voluntary Chapter 7 bankruptcy petition. ATR subsequently filed an adversary proceeding in part seeking a determination that the Delaware court's judgment was nondischargeable because it arose from "fraud or defalcation while acting in a fiduciary capacity" as provided under 11 U.S.C. 523(a)(4). Bonilla moved to dismiss ATR's claim on the ground that he was not a "fiduciary" as contemplated under Section 523(a)(4). The bankruptcy court then issued a tentative ruling granting Bonilla's motion to dismiss, but later reversed its tentative ruling, finding that Bonilla *was* a "fiduciary" within the meaning of Section 523(a)(4). Although the bankruptcy court acknowledged that some Delaware state decisions indicated that directors "are not trustees in the strictest sense, because they do not directly hold legal title for a beneficial owner," Section 523(a)(4) only required that the "fiduciary duty [] preexist the trust, and [] be substantially similar to the role of a trustee, in that there must be a trust res, identifiable beneficiaries, and clear notice of the duties of loyalty, honesty, and fair dealing toward the beneficiaries in all matters affecting the trust res." *In re Bonilla*, 2007 WL 3034800 \*2 (N.D. Cal. 2007). ATR then filed a motion for summary judgment based on the court's ruling and Bonilla filed a motion for reconsideration. After a round of briefing and a hearing, the bankruptcy court denied Bonilla's motion and

3

granted summary judgment in favor of ATR. This appeal ensued. A full round of briefing and a hearing preceded this order.

**ANALYSIS**

A district court reviews a bankruptcy court order granting summary judgment *de novo*, making all reasonable inferences in the favor of the nonmoving party. *See Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002).[1]

Section 523(a)(4) provides that all debts arising from "fraud or defalcation while [the debtor was] acting in a fiduciary capacity" are nondischargeable. It is hornbook law that a corporate director is a "fiduciary" but the caselaw has placed a gloss on this term to narrow the exemption from dischargeability. Whether a certain relationship is a "fiduciary" one within the meaning of Section 523(a)(4) is a question of federal law, although state law must be consulted in ascertaining whether the requisite trust relationship exists.

The concept of nondischargeability or fraud in the bankruptcy context is deeply rooted. The Bankruptcy Act of 1841 stated (emphasis added):

> All persons whatsoever, residing in any State, District, or Territory of the United States, owing debts, *which shall not have been created in consequence of a defalcation as a public officer; or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity*, who shall, by petition, . . . [list] his or their creditors . . . and therein declare themselves unable to meet their debts and engagements, shall be deemed bankrupts within the purview of this act . . . .

As early as the middle of the nineteenth century, the Supreme Court recognized the exemption of certain debts from dischargeability. *See Chapman v. Forsyth*, 43 U.S. 202, 208 (1844).

On the other hand, the Supreme Court has referenced limits on classifying certain debts as nondischargeable (emphasis added):

> The second point is, whether a factor, who retains the money of his principal, is a fiduciary debtor within the act. If the [Bankruptcy Act] embrace such a debt, it will be difficult to limit its application. *It must include all debts arising from agencies*; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

4

> the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. . . . The act speaks of technical trusts, and not those which the law implies from the contract.

*Ibid*. It has further been elaborated:

> It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto. In the words of [Justice Samuel Blatchford]: "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created." Was petitioner a trustee in that strict and narrow sense?

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934). The concern, of course, is that the exception will swallow the rule.

The Ninth Circuit has stated:

> The broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context. The trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a 'trustee' before the wrong and without reference to it. These requirements eliminate constrictive, resulting or implied trusts.

*Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986). And, "the fiduciary relationship must be one arising from an express or technical trust . . . ." *Lewis v. Scott*, 97 F.3d 1182, 1185 (9th Cir. 1996).

There are a wealth of Ninth Circuit decisions that address dischargeability in the Section 523(a)(4) context. None, however, speak to the specific issue presented here: whether a corporate director of a *Delaware* company is a "fiduciary" as contemplated by Section 523(a)(4). There is thus no controlling authority on the subject. Accordingly, this order will first review those decisions that have addressed Section 523(a)(4) in somewhat similar contexts.[2]

---

[2] Here, Bonilla has not contested that his debt arose from "fraud or defalcation." The sole issue, therefore, is whether Bonilla — as a company director — was in a "fiduciary" relationship with DHC within the meaning of Section 523(a)(4).

5

In *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. 1986), the issue was whether a California partner was a fiduciary under Section 523(a)(4). The Ninth Circuit answered the question affirmatively quoting the California Supreme Court (emphasis added):

> *Partners are trustees for each other*, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

*Leff v. Gunter*, 33 Cal.3d 508, 514 (1983)(quoting *Page v. Page*, 55 Cal.2d 192, 197 (1961)). The circuit further stated, "[i]f state law makes clear that a partner necessarily is a trustee over partnership assets for all purposes, then that partner is a fiduciary within the narrow meaning of [Section] 523(a)(4)." *Id.* at 797.

In *Lewis v. Scott*, 97 F.3d 1182 (9th Cir. 1996), the Ninth Circuit framed the question as "whether under Arizona law, a partnership embodies an 'express' or 'technical' trust relationship, rather than a trust *ex maleficio* within the meaning of Section 523(a)(4)." Citing *Ragsdale* and Arizona law, the court concluded that it did. Similarly, in *Blyer v. Hemmeter*, 242 F.3d 1186, 1190 (9th Cir. 2001), the Ninth Circuit held that fiduciaries under the Employee Retirement Income Security Act were fiduciaries under Section 523(a)(4) because ERISA gives fiduciaries discretionary authority or control over the assets of ERISA plans.

In what is probably the most pertinent decision here, *Cantrell v. Cantrell*, 329 F.3d 1119 (9th Cir. 2003), the Ninth Circuit addressed the question of whether a *California* director was a "fiduciary" under Section 523(a)(4). There, a California corporation, Cal-Micro, Inc., obtained a default judgment against one of its corporate directors, Cantrell, for breach of fiduciary duty. Cantrell then filed a voluntary Chapter 7 bankruptcy petition. In response, Cal-Micro filed a complaint with the bankruptcy court to enforce its default judgment as nondischargeable under Section 523(a)(4). The bankruptcy court eventually granted Cal-Micro's motion for summary judgment on its claim and the Bankruptcy Appellate Panel reversed. The Ninth Circuit affirmed the BAP concluding that while California officers and directors were "imbued with the fiduciary duties of an agent and certain duties of a trustee,

6

they are not trustees *with respect to corporate assets*." *Id*. at 1126 (emphasis added). The decision heavily relied on the California Supreme Court's decision in *Bainbridge v. Stoner*, 16 Cal.2d 423, 427–28 (1940), which stated:

> One who is a director of a corporation acts in a fiduciary capacity, and the law does not allow him to secure any personal advantage as against the corporation or its stockholders. However, strictly speaking, the relationship is not one of trust, but of agency, although it has been held that a director must comply with the requirements of section 2230 of the Civil Code relating to trustees.

*See also Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327 (1966) (stating that officers and directors of a corporation are "technically not trustees"). The decision distinguished the earlier decision in *Ragsdale*:

> Nevertheless, the bankruptcy court reached a different conclusion based primarily on our holding in *Ragsdale*. There, we concluded that "California has made all partners trustees over the assets of the partnership" and that, therefore, "California partners are fiduciaries within the meaning of [Section] 523(a)(4)." 780 F.2d at 796–97. We based our holding on several California cases that "raised the duties of partners beyond those required by the literal wording" of the California partnership statute. *Id*. at 796.
>
> But here, the BAP correctly concluded that whether California partnership law provides that individual partners are trustees of the firm is of minimal significance, especially in light of the California Supreme Court's clear holding in *Bainbridge*. In contrast to partnership law, California corporate law simply does not provide the same trust relationship between corporate principals and the corporation. As evident in *Bainbridge* and subsequent cases, California case law has consistently held that while officers possess the fiduciary duties of an agent, they are not trustees with respect to corporate assets. While Cantrell in his capacity as an officer exercised some control over corporate assets of Cal-Micro, it does not follow that Cantrell was a fiduciary within the meaning of [Section] 523(a)(4).

*Id*. at 1126–27. Under California corporate law, therefore, a corporate director is not a "fiduciary" within the meaning of Section 523(a)(4).

Yet, courts have recognized that the requirement of an "express" or "technical" trust is not absolute or formulaic. The Fifth Circuit, for example, has stated:

> There has been some disagreement among the courts as to what exactly is meant by the requirement that there be a "technical trust" to satisfy section 523(a)(4). Most courts today, however, recognize that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed

7

> pursuant to statute or common law. Thus, the trust obligations necessary under section 523(a)(4) can arise pursuant to a statute, common law or a formal trust agreement.

*Bennnett v. Bennett*, 989 F.2d 779, 784–85 (5th Cir. 1993). Such decisions, including those in the Ninth Circuit, indicate that determining whether a certain debt falls within the Section 523(a)(4) exception involves a specialized analysis into the particulars and specifics of the relationship in question.[3]

Significantly, the Ninth Circuit's rule of decision turns on state law. Turning to Delaware law (where the corporation in question was organized), we find that the Delaware state decisions blow hot and cold. Many draw distinctions between the fiduciary obligations imposed on a corporate fiduciary and those imposed on a trustee (emphasis added):

> In *Keenan v. Eshleman*, supra, minority stockholders, in their derivative right, sued the officers and directors of the corporation to compel them to account for and pay over money paid as managing fees to a certain management corporation of which the directors were also officers, and by whom it was controlled; and in these circumstances we repeated that directors of a corporation were trustees for the stockholders.
>
> The language of the Court is to be interpreted in the light of the situations presented. Clearly, *it was not meant that directors of a corporation are trustees, in a strict and technical sense, in all of their relations with the corporation, its stockholders and creditors*; but, as clearly, it was implied that they should be treated as such when they have unlawfully profited through breach of duty, and at the expense of the corporation. *Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808, 813 (Del. Supr. 1944).
>
> \*       \*       \*
>
> *The officers and directors of a corporation are fiduciaries but they are not real trustees. They do not hold the legal title to the corporate property*. They occupy a position of extreme trust and confidence toward all interested parties, and exercise great powers in managing corporate affairs, but they are not trustees of an express trust in the true sense of that term. *Bovay v. H.M. Byllesby & Co.*, 29 A.2d 801, 804 (Del. Supr. 1943).

---

[3] The Ninth Circuit's decision in *Ragsdale* was expressly cited by the Fifth Circuit in *Bennett*. *See also Teichman v. Teichman*, 774 F.2d 1395, 1399 (9th Cir. 1981) ("While the meaning of 'fiduciary' in [Section 523(a)(4)] is an issue of federal law, state law, within limits, will be recognized. . . . The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and not as a result of the act of wrongdoing").

8

1  Others underscore the parallels:

2      An action by shareholders against corporate directors for breach of
    duties owed either to the corporation or to stockholders as a class
3      is both historically and functionally very similar to a judicial
    accounting by a trustee.  Indeed, the fiduciary duty of corporate
4      directors is a court created duty that historically springs from
    equity's experience with trusts and trustees.  *Hynson v. Drummond*
5      *Coal Co.*, 601 A.2d 570, 575 (Del. Ch. 1991).

6                \*              \*              \*

7      [W]e note the historic cautionary approach of the courts of
    Delaware that efforts by a fiduciary to escape a fiduciary duty,
8      whether by a corporate director or officer *or other type of trustee*,
    should be scrutinized searchingly.  *Gotham Partners, L.P. v.*
9      *Hallwood Realty Partners, L.P.*, 817 A.2d 160, 168 (Del. Supr.
    2002).

10                \*              \*              \*

11

12      It is not always necessary for [directors] to reap a personal profit or
    gain a personal advantage in order for their actions in performance
13      of their quasi trust to be successfully questioned. Trustees owe not
    alone the duty to refrain from profiting themselves at the expense
14      of their beneficiaries. They owe the duty of saving their
    beneficiaries from loss.  *Bodell v. Gen. Gas & Elec. Corp.*, 132 A.
15      442, 447 (Del. Supr. 1926).

16  Recently, the Supreme Court of Delaware has taken a somewhat middle-ground approach

17  (emphasis added):

18      We begin with the bedrock statutory principle that "[t]he business
    and affairs of every corporation ... shall be managed by or under
19      the direction of a board of directors . . . ."  In discharging their
    management function, "directors owe fiduciary duties of care and
20      loyalty to the corporation and its shareholders."  These duties stem
    in part from the *quasi-trustee and agency relationship* directors
21      have to the corporation and stockholders that they serve.

22  *Schoon v. Smith*, 953 A.2d 196 (Del. Supr. 2008).

23      This order holds that Bankruptcy Judge Carlson correctly distinguished Delaware law

24  from California law in applying Section 523(a)(4).  A Delaware corporate director has fiduciary

25  duties with respect to the corporation and its shareholder at all times.  These duties exist

26  regardless of any wrongdoing by the director.  When a director breaches a duty of care or

27  loyalty, he or she has, from a functional perspective, defrauded the corporation and its

28  shareholders much in the same way a trustee does who robs or plunders a beneficiaries' assets.

It is undisputed that Bonilla egregiously breached his duties to DHC and its shareholders. Indeed, Bonilla's counsel admitted both in his briefs and at the hearing on this appeal that Bonilla acted with a complete disregard to his obligations and responsibilities as a corporate director. That much is not contested. To quote from the Delaware Chancery Court, "[Bonilla's] behavior was not the product of a lapse in attention or judgment; it was the product of a willingness to serve the needs of [his] employer, Araneta, even when that meant intentionally abandoning the important obligations they had taken on to the Delaware Holding Company and its minority stockholder, ATR."

*Cantrell* is distinguishable. Significantly, the decision was heavily based on *Bainbridge*. There, the Supreme Court of California made crystal clear that the relationship between a California director and the corporation is, strictly speaking, based on principles derived from *agency* — not those arising from trust. It was this very distinction that was at the heart of the Supreme Court's concern that the exception would swallow the rule. *See Chapman*, 43 U.S. at 208 (1844) ("If the [Bankruptcy Act] embrace such a debt, it will be difficult to limit its application. *It must include all debts arising from agencies*; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate") (emphasis added). Here, however, the best reading of the Delaware law is that directors are fiduciaries and more like trustees than mere agents. Notably, California has chosen to codify the duties of a corporate director, *see* Cal. Corp. Code § 309(a) ("A director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances"), while Delaware has adopted a common-law approach. The most recent Delaware Supreme Court decision, *Schoon*, describes a corporate directors' duties as stemming from "quasi-trustee and agency" principles. True, this leads to a different result than under California law but it is to be expected that state law can vary from jurisdiction to jurisdiction.

Bonilla was a fiduciary before DHC was looted and remained one after. He was well on notice of his duties as a fiduciary and chose to ignore them. His responsibilities as a corporate director were equal, for all intensive purposes, to those of a trustee. As such, his debt is nondischargeable under Section 523(a)(4).

## CONCLUSION

For above-stated reasons, the ruling of the bankruptcy court is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: September 25, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE